MILLER COUNTY BANK & TRUST COMPANY *v.* BEASLEY.

## Opinion delivered June 16, 1924.

1. APPEAL AND ERROR—APPEAL FROM DIRECTED VERDICT.—On review of a verdict directed for plaintiff, the evidence must be viewed in the light most favorable to defendant.

2. BANKS AND BANKING—NOTICE OF LANDLORD'S LIEN.—Where a bank knew of a tenancy at the time a subtenant deposited funds from the sale of a crop to the credit of the tenant, which the bank afterwards applied to the tenant's debt, it was charged with notice that the landlord, under Crawford & Moses' Dig., §§ 6892 and 6894, had a lien thereon for rent.

3. EVIDENCE—KNOWLEDGE OF LAW.—A bank receiving a deposit from a subtenant and afterwards applying it on the tenant's debt to it is conclusively presumed to have knowledge of the statute giving the landlord a lien on the subtenant's crop for rent.

4. BANKS AND BANKING—NOTICE TO PRESIDENT.—A bank is charged with notice of facts known to its president, and also with such facts as would have been known by the inquiry which the president should have made, in view of the facts of which he was advised.

Appeal from Miller Circuit Court; *J. H. McCollum,* Judge; affirmed.

*William H. Arnold, Jr.,* for appellant.

The money was Austin's, and the bank had the right to make the credit. The law of the case is well stated in 7 Corpus Juris, p. 658. See also 36 App. Div. 487, 55 N. Y. S. 941; 69 Ark. 47. Even if the money was Beasley's, yet he did not notify the bank that it was his money, or that Austin held it as his agent, or in trust. As to the relation between the lessor and sublessee, reference is made to 24 Cyc. 1183, and cases cited in note thereto; *Id.* 1176; 43 S. W. (Tex.) 556. The lower court erred in holding that C. & M. Digest, § 6892, changed the common-law rule that there is no privity of contract or estate between a landlord and a subtenant. That statute was only intended to limit the rights of the landlord. It does not mean that the subtenant is liable directly to the landlord,

and was not passed for the landlord's benefit, but to limit the extent of his lien. See also C. & M. Digest, § 6895.

*Gustavus G. Pope,* for appellee.

There is no dispute as to the money involved being the proceeds of rent cotton on lands rented to Willis Austin, and the crop raised by Ed. Johnson. The bank was duly notified when it was deposited, and Beasley informed the president of the bank that it belonged to him for rents before the note of Austin was due. C. & M. Dig., §§ 6880, 6894. It is immaterial whether Austin subrented to Johnson or not, or whether he acted as Beasley's agent. He had no authority to collect the rent either way. A landlord's lien is superior to any other lien, and, even if the Austin note had matured, and if the bank had a right to claim a lien, still it would have been inferior to the landlord's lien. 151 Ark. 405; *Id.* 145. Beasley as landlord had the right to the proceeds of the rent cotton deposited in the banks, identified as this was. 165 Pac. 682; 222 S. W. 859.

SMITH, J. C. A. Beasley owned a small farm which he rented to W. A. Austin for the year 1922. Austin subrented a portion thereof to Ed Johnson for a fourth of the cotton. Johnson raised two bales of cotton, one-fourth of the proceeds of which amounted to $57.83, and this amount he deposited with the appellant bank to the credit of Austin, who delivered the certificate of deposit to Beasley in the early fall. On January 4, 1923, Austin gave Beasley a check on the bank for the amount of the deposit, but the bank refused payment upon the ground that it had credited the amount of the deposit to a past-due note of Austin payable to the bank.

At the conclusion of all the testimony the court instructed the jury that Beasley was entitled to one-fourth of the proceeds of the cotton, and that the bank had no right to credit this amount to Austin's note to it, and to return a verdict for Beasley for the amount

thereof—this suit having been brought to recover this money.

The jury returned a verdict in accordance with this instruction, and from the judgment pronounced thereon is this appeal.

The testimony on behalf of Beasley was to the effect that, about the time the money was deposited, and before it was applied to Austin's note, Beasley notified Booker, the president of the bank, that the deposit was a part of the proceeds of the sale of Johnson's cotton, on which he had a landlord's lien; but, inasmuch as the verdict was directed against the bank, we must, of course, view the testimony in the light most favorable to it.

Mr. Booker denied that Beasley had told him about Johnson, but he admitted that he knew Austin was himself a tenant, and that he had a subtenant, and that Austin had stated to him that he would have some rent due from his tenant, and Austin agreed to apply this rent to his debt to the bank.

Johnson, the subtenant, was a colored man, and Booker admitted that, before Johnson paid his rent, Austin had told him "this darkey would be in to put some money there—rent he owed him."

We think it clearly appears from Booker's admissions that he knew, before the deposit was credited, that Austin was a tenant and that Beasley was his landlord, and that the deposit would be made by a subtenant. Being in possession of these facts, the bank was charged with notice that Beasley had a lien on the crop of the subtenant for the *pro rata* part of the rent due on the subtenant's land.

It is pointed out that at the common law there was no privity between the landlord and a subtenant. But this rule has been changed by the statute. Section 6892, C. & M. Digest, provides that any person subrenting lands or tenements shall only be held responsible for the rent of such lands as are cultivated or occupied by him; and by § 6894, C. & M. Digest, it is made unlawful for a ten-

ant who has leased lands to a subtenant, and has not paid his own rent, to collect rent from the subtenant without having first obtained from the landlord a written direction, to be delivered to the subtenant, stating the amount of rent authorized to be collected from the subtenant. By § 6896, C. & M. Digest, it is made a misdemeanor, punishable by fine or imprisonment, or by both fine and imprisonment, for a tenant to collect rent from a subtenant without first paying his own rent or obtaining written permission from the landlord to collect from the subtenant. Section 384, chapter Landlord & Tenant, 16 R. C. L. 879; *Jacobson* v. *Atkins,* 103 Ark. 91; *Storthz* v. *Smith,* 109 Ark. 552; and notes to the cases of *Kanawha-Ganley Coal Co.* v. *Sharp,* Ann. Cas. 1916E, p. 386, and the same case annotated in 52 L. R. A. (N. S.) 977.

It was not necessary for Beasley to call the attention of the bank to these sections of the statute, because the bank is conclusively presumed to have had knowledge of them. The bank will also be charged, not only with the facts actually known by its president, but also with such facts as would have been known by the inquiry which the president should have made, in view of the facts of which he was advised. It was known to Booker that Austin was Beasley's tenant. He admits that Beasley so advised him. He knew that Austin's tenant proposed to deposit rent money to Austin's credit, and he knew that Austin had not paid his own rent, and, knowing this, he must have known—for the law so provides—that the lien of Beasley was superior to that of Austin against the crop grown by the subtenant to the extent of the *pro rata* part of the rent due on the land cultivated by the subtenant. Booker knew Austin had not paid his rent; he knew that the deposit was made by a tenant of Austin, and Johnson told him, when the deposit was made, what is was for, and he must therefore be charged with knowledge, as a matter of law, that the lien of Beasley was superior to that of Austin, and that Austin himself had no right to collect this rent without first paying his own.

Booker should have known that Austin's tenant was not voluntarily paying rent twice, and he actually knew that Austin had not paid Beasley, for he admitted that Beasley had so advised him, and this was done before the deposit was credited to Austin's note.

Under these circumstances the verdict was properly directed in Beasley's favor, and the judgment is therefore affirmed.