**STONE FOREST INDUSTRIES, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant/Cross– Appellant.**

**Nos. 91–5120, 91–5121.**

United States Court of Appeals, Federal Circuit.

Aug. 13, 1992.

Wesley R. Higbie, Hendrickson, Higbie & Carter, San Francisco, Cal., argued, for plaintiff-appellant.

Paul D. Langer, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for defendant/cross-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Sharon Y. Eubanks, Asst. Director and Anthony J. Ciccone, Atty. Also on the brief was Kenneth Capps, Atty., Natural Resources Div., Office of General Counsel, Dept. of Agriculture, Washington, D.C., of counsel.

Before RICH, NEWMAN, and MICHEL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In this appeal and cross-appeal from a decision of the United States Claims Court,[1] Stone Forest Industries (SFI) appeals the portion of the decision refusing refund of certain advance deposits paid by SFI under a timber contract. The United States appeals the court's assessment of interest on certain sums. We reverse on both of these issues.

Background

In 1977 the United States Forest Service and SFI entered into a contract pursuant to the National Forest Management Act of 1976, 16 U.S.C. § 472a, whereby SFI agreed to purchase, cut, and remove 19,430 MBF (thousand board feet) of timber in the Klamath National Forest in California. The contract was called the "Flathead Sale". The termination date of March 31, 1980 was extended several times, until the contract finally terminated on September 3, 1985.

On September 28, 1984 the California Wilderness Act, Pub.L. No. 98–425, 98 Stat. 1619, was enacted. On December 6, 1984 the Forest Service notified SFI in writing that this Act impacted upon four of the fourteen units in the Flathead Sale, *viz.*, units 8, 9, 11, and 14. Units 8 and 9 were

1. *Stone Forest Indus., Inc. v. United States,* 22 Cl.Ct. 489 (1991), *reconsid. denied,* No. 765–86 C  (Mar. 5, 1991) (order and opinion).

in the newly designated wilderness area, and units 11 and 14 were affected by access roads. Access was denied, by written notification, to all four units. On December 21, 1984 SFI requested modification of the contract to delete, the affected area. The Forest Service did not respond. On January 17, 1985 SFI requested cancellation of the entire contract. On February 1, 1985, the Forest Service wrote SFI that they were awaiting instructions, and hoped to respond to SFI's request by March 1, 1985. No response was issued, then or later.

On April 24, 1985, SFI submitted a written plan to commence operations in units 11 and 14 with work scheduled to begin May 1, 1985. On April 30, 1985, the Forest Service issued written notification to SFI denying access to units 11 and 14. In July 1985, with approximately forty days remaining in the contract term, the Forest Service orally (by telephone) notified SFI that SFI could harvest timber in units 11 and 14. No written confirmation or notification authorizing access to units 11 and 14 was issued, and no timber was harvested in those units. The contract expired, by its terms, on September 3, 1985.

SFI requested refund of its deposits of $468,531, which had been deposited, as required by the Forest Service, as advance payment for the timber in units 8, 9, 11, and 14, the area to which access had been denied. The contracting officer refunded $111,768, the sum applied to units 8 and 9. The contracting officer held that SFI had breached the contract by failing to harvest the timber in units 11 and 14 after the oral notice to proceed in July 1985, and assessed damages of $356,763, the remaining amount of SFI's advance payment.

In its opinion denying SFI's motion for reconsideration of the decision granting the government's motion for summary judgment, the Claims Court held that although denial of access to units 8 and 9 was an anticipatory breach of the contract, this was "a mere *pro tanto* breach of a divisible contract". The court also held that the Forest Service's "temporary" denial of access to units 11 and 14 did not constitute a material breach of the contract. The Claims Court held that since the United States had not breached the contract, SFI was required to perform with respect to units 11 and 14, and was liable for damages for failure to do so. The Forest Service's assessment of damages of $356,763 was affirmed by the Claims Court.

The Claims Court held the United States liable for statutory interest on the $111,768 that was refunded, and for interest on the unpaid interest.

I

*Who Breached the Contract?*

The first question is whether the Forest Service materially breached the contract, thereby excusing SFI from all further performance, or whether SFI breached the contract by failing to log units 11 and 14.

■ The grant of summary judgment by the Claims Court receives plenary appellate review. No material facts were in dispute, and the case was decided as a matter of law. *Pine Prod. Corp. v. United States*, 945 F.2d 1555, 1558 (Fed.Cir.1991); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987).

■ SFI states that the United States materially breached the contract when it withdrew four of the fourteen units from the Flathead Sale, following enactment of the California Wilderness Act. Upon material breach of a contract the non-breaching party has the right to discontinue performance of the contract, and to seek redress in accordance with law. *Malone v. United States*, 849 F.2d 1441, 1445–46 (Fed.Cir.), *modified*, 857 F.2d 787 (Fed.Cir.1988); *Cities Serv. Helex, Inc. v. United States*, 543 F.2d 1306, 1313, 211 Ct.Cl. 222 (1976); *Airco, Inc. v. United States*, 504 F.2d 1133, 1135, 205 Ct.Cl. 493 (1974).

■ Not every departure from the literal terms of a contract is sufficient to be deemed a material breach of a contract requirement, thereby allowing the non-breaching party to cease its performance and seek appropriate remedy. The standard of materiality for the purposes of

deciding whether a contract was breached "is necessarily imprecise and flexible." *Restatement (Second) of Contracts* § 241 cmt. a (1981) (hereinafter *Restatement (Second)*). The determination depends on the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties. *See generally Restatement (Second)* § 241 cmts. a & b.

### A

#### Units 11 and 14

▉ The Claims Court held that the Forest Service's oral notification to resume logging remedied the prior denial of access to units 11 and 14. The court observed that there was a factual dispute as to whether SFI had requested written confirmation of this oral notice, but found this fact immaterial since SFI did not deny that it had received oral notification. 22 Cl.Ct. at 492. We agree that the factual issue of whether SFI requested written confirmation is immaterial, for in this case as a matter of law written notice from the Forest Service was required, whether or not it was requested. SFI bore no burden to request written confirmation, for the Forest Service contract required that all notices must be in writing, and SFI could not proceed without it. Contract provision *B6.11—Notices,* states:

> Notices by either party as to action taken or to be taken by the other respecting this contract shall be made in writing to the other party's designated representative.

All previous notices between the parties were in writing. The notice from the Forest Service denying SFI access to units 8, 9, 11, and 14, and the notice rejecting SFI's logging schedule of units 11 and 14, were in writing. Any withdrawal by the Forest Service of those written notices was thus also required to be in writing. *Cf. Copco Steel & Eng'g Co. v. United States,* 341 F.2d 590, 598–99, 169 Ct.Cl. 601, 616 (1965) (written notification not required where prior conduct of parties made clear that it would serve no useful purpose).

▉ In addition to contract provision B6.11, *supra,* provision *B8.3—Contract Modification* states that the "contract can be modified only by written agreement of the parties." The Forest Service regulations in effect during the contract term stated that SFI was not permitted to operate without a written modification even in urgent situations:

> **Modifications to Prevent Environmental or Resource Damage.** .... Urgency to effect changes does not justify verbal modification. Purchasers must not be permitted or required to operate under changed terms or conditions prior to execution of a written modification.

Forest Service Manual at § 2433.23. The Forest Service Manual is a general guide for use by Forest Service employees. Although it "does not have the force and effect of law", *Hoskins Lumber Co. Inc. v. United States,* 24 Cl.Ct. 259, 266 (1991), the Manual is evidence of the custom and practice of the agency, *Everett Plywood Corp. v. United States,* 512 F.2d 1082, 1089, 206 Ct.Cl. 244 (1975). It is not disputed, and is in accord with the explicit provisions of the contract between the Forest Service and SFI, that written notice was required of these actions taken under the contract.

The authorization to log units 11 and 14 was ineffective by telephone. Although the government insists that a telephone conversation which was never reduced to writing was of such effect as to place SFI in breach for failure to act on that conversation, that is incorrect. SFI was not required to act on the telephone call, and indeed was prohibited from doing so. Absent proper notice, the Forest Service's written denial of access to units 11 and 14 remained in effect. That denial was never withdrawn, and was a permanent denial of access to units 11 and 14.

We conclude that SFI committed no breach of contract by failure to act on the oral notice.

### B

#### Units 8, 9, 11 and 14

We next consider the effect of removal of units 11 and 14, along with units 8 and 9, on the entire contract.

The Claims Court held that the Forest Service breached the contract when it denied access to units 8 and 9. The Claims Court also held that the Forest Service's denial of access to units 11 and 14 was "temporary". As discussed *supra*, this ruling was in error. The breach that the Claims Court correctly found as to units 8 and 9 also applied to units 11 and 14. We therefore determine whether the denial of access to the total of units 8, 9, 11 and 14 constitutes a material breach by the Forest Service.

■ Units 8, 9, 11, and 14 comprise 15.89% of the total Flathead Sale. Although the Claims Court found that the denial of access to units 8 and 9, about 7% of the Flathead Sale, was not material, that is not the entire area to be considered. The materiality of a breach is determined in light of the totality of events and circumstances. *Restatement (Second)* § 241 cmt. a. It is incorrect to measure each contributing element separately and, finding it small, remove it from the equation. Whether removal of units 8 and 9 alone, or units 11 and 14 alone, was material, is not the measure. It is the total affected volume that must be considered.

In *Everett Plywood* the Forest Service prevented the purchaser from removing the final 3000 MBF of timber on a total sale of 46,000 MBF, whereby Everett argued that this excused their obligation to perform road maintenance at the end of the contract. The *Everett Plywood* court stated that the Forest Service's breach as to the final 6.5% of lumber "neither defeated the whole purpose of the contract nor deprived plaintiff of substantially all it had bargained for," 512 F.2d at 1093–94, and required Everett to fulfill its residual contract obligations. A breach is "less likely to be regarded as material if it occurs late, after substantial ... performance, and more likely to be regarded as material if it occurs early...." *Restatement (Second)* § 241 cmt. d. SFI had logged about 51% of the Flathead Sale at the time of the withdrawal of the four units. In comparison, the plaintiff in *Everett Plywood* had logged about 93% of the lumber at the time the Forest Service acted.

Although percentages alone are not always dispositive, and it is "impossible to lay down a rule that can be applied with mathematical exactness", *Restatement Contracts* § 275 cmt. a (1932), we conclude that removal of 15.89% of the timber initially contracted for, at this stage of contract performance, was a material breach by the United States.

## C

### *Divisibility*

■ The consequence of, and remedy for, breach of a contract depends in part upon whether the contract was divisible. If only a severable portion of a contract was breached, the non-breaching party can recover damages for that portion of the contract but its remaining contractual duties are not discharged. However, if a contract is not clearly divisible, in accordance with the intention of the parties, the breaching party can not require the non-breaching party to continue to perform what is left of the contract. *See generally Restatement (Second)* §§ 237 & 240; *Pennsylvania Exch. Bank v. United States*, 170 F.Supp. 629, 145 Ct.Cl. 216 (1959) (looking to contract terms to ascertain divisibility).

■ There is a presumption that when parties enter into a contract, each and every term and condition is in consideration of all the others, unless otherwise stated. Unless justice so requires, courts should hesitate to rewrite a contractual arrangement after a material breach by one party, for the standard remedies of law and equity usually can accommodate the requisite adjustment of obligations. The choice of remedy is generally with the non-breaching party, and only in exceptional circumstances will equity require the non-breaching party to continue to perform the remainder of the contract. An example of such circumstances is *Everett Plywood*, where the non-breaching party was required to perform the contract-end road maintenance, for this obligation related not

to the 6.5% of the total contract that had been deleted, but the 93.5% of the bargained-for benefit that had been received. Analogous circumstances are not here present.

█ The contract between the Forest Service and SFI does not support the conclusion that it was viewed as divisible. The first page of the contract states:

> Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

"Included Timber" is defined as the total estimated volume of timber in the Flathead Sale area, as set forth in "Table A2", which shows the volume for each of the fourteen mapped logging areas. The parties agreed that the Forest Service would sell SFI all of the Included Timber, and that SFI would cut and remove all of the Included Timber.

In numerous provisions of the contract, damages or adjustment of rights flowing from the contract are predicated on the total volume of Included Timber. *See, e.g., B2.133—Damage by Catastrophe; B2.41— Adjustment for Volume Deficit; B2.42— Adjustment for Excess Volume; B3.1— Current Contract Rates;* and *B6.31—Operating Schedule.* There is no provision for partial sale and harvesting of trees, no schedule of price if less than all the Included Timber were available. *See Sierra Pacific Indus. v. Lyng,* 866 F.2d 1099, 1104 n. 3 (9th Cir.1989) (explaining similar contract).

█ Without clear support in the contract document and in the intent of the parties, a contract that is written as a unitary package shall not be severed into parts in order to favor the breaching party. We conclude that both parties intended to, and did, enter into a non-divisible contract for the Included Timber in the Flathead Sale.

**2.** 41 U.S.C. § 611:
Interest on amounts found due contractors on claims shall be paid to the contractor from

**Conclusion**

The contract was not divisible, and was materially breached by the United States. Since the contract was breached by the United States and not by SFI, SFI was erroneously required to pay damages for breach. The sum prepaid for logging of units 11 and 14, $356,763, shall be refunded to SFI with interest in accordance with 41 U.S.C. § 611.[2]

**II**

*Interest*

The Forest Service did not contest SFI's claim to recovery of the advance payment on units 8 and 9. The amount of $111,768 was refunded in three payments on December 25, 1986, December 31, 1986, and February 17, 1987. The interest due in accordance with the Contract Disputes Act, 41 U.S.C. § 611, was not paid.

Despite concession of liability for interest on the refunded payments, the United States has failed to pay this interest. Government counsel offered no explanation at argument before this court. The failure of the government to pay this sum, due for over five years, can not be condoned.

█ The government further argues that this obligation, which vested in December 1986 and February 1987 and remains unpaid, does not accrue interest, no matter how long the government delays. The Claims Court disagreed, holding that it was inequitable to permit the government to have the benefit of the wrongfully withheld sums without accrual of interest. The government asserts that the doctrine of sovereign immunity insulates it from this payment.

In *ACS Const. Co. v. United States,* 230 Ct.Cl. 845 (1982), our predecessor court held that the Contract Disputes Act did not authorize payment of interest on an interest liability. We remain bound by that precedent, and must reverse the Claims Court's award of additional interest, taking note that the Prompt Payment Act (PPA),

the date the contracting officer receives the claim ... from the contractor until payment thereof.

31 U.S.C. §§ 3901–3906 (1982), *amended by* 31 U.S.C. §§ 3901–3907 (1988) should avoid such abuses in the future.

REVERSED.