In re **OSTROM–MARTIN, INC., Debtor.**

**Richard E. BARBER, Chapter 7 Trustee for Ostrom–Martin, Inc., Plaintiff,**

v.

**PRINCEVILLE STATE BANK, Defendant.**

Bankruptcy No. 92–80099.
Adv. No. 92–8162.

United States Bankruptcy Court, C.D. Illinois.

Dec. 15, 1993.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, IL, for plaintiff.

Gregg N. Grimsley, Vonachen, Lawless, Trager & Slevin, Peoria, IL, for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Before the Court are cross motions for summary judgment. A hearing was held on June 8, 1993, and the matter was taken under advisement.

OSTROM–MARTIN, INC. (OMI) operated a grain elevator. OMI's grain dealer's license expired on November 29, 1991. On December 30, 1991, OMI closed its doors and the Illinois Department of Agriculture, acting through its Bureau of Warehouses (DEPARTMENT), seized the elevator. On January 2, 1992, the Defendant, the PRINCEVILLE STATE BANK (PRINCEVILLE) set off OMI's bank account in the amount of $309,217.80. OMI was the subject of an involuntary petition under Chapter 7 of the Bankruptcy Code, with OMI consenting to an adjudication. The order for relief entered by this Court related back to January 14, 1992. The Trustee brought this proceeding against PRINCEVILLE to recover the set-off funds for the benefit of the bankruptcy estate.

While the Trustee filed his complaint under § 547 of the Bankruptcy Code, 11 U.S.C. § 547, to recover a preferential transfer, and under §§ 544, 545 and 551 of the Bankruptcy Code, 11 U.S.C. §§ 544, 545 and 551, at the hearing on the cross motions the Trustee conceded that he was not proceeding under § 547. According to the theory of the Trustee, under § 545 he can avoid the fixing of the state statutory lien of the DEPARTMENT and under § 551 preserve it for the benefit of the bankruptcy estate, or acting under § 544 he can assert the DEPARTMENT's lien to recover the set-off. Under Illinois law, a producer, upon delivery of grain to an elevator, is given a statutory lien on all the "grain assets" of the grain elevator. This lien con-

tinues until the producer is paid in full. The lien of the producer is deemed assigned to the DEPARTMENT, and if the elevator fails and is taken over by the DEPARTMENT the lien transfers over to the assets received and liquidated by the DEPARTMENT and to the extent that the producer remains unpaid, the producer is entitled to certain payments from the state insurance fund. 20 ILCS 205/40, et seq.[1] It is the Trustee's position that the funds in OMI's bank account which PRINCEVILLE offset were "grain assets" and thus subject to the statutory lien in favor of the DEPARTMENT.[2] Claiming that the statutory lien trumps any interest of PRINCEVILLE, the Trustee seeks to avoid the fixing of the lien under § 545, preserve the lien under § 551 for the benefit of the bankruptcy estate, and assert it against PRINCEVILLE, or under § 544 assert the DEPARTMENT's lien against PRINCEVILLE.

PRINCEVILLE professes not to understand the Trustee's theory. PRINCEVILLE contends that the propriety of the set-off is governed exclusively by § 553 of the Bankruptcy Code, 11 U.S.C. § 553, and that the Trustee should not be entitled to any recovery because PRINCEVILLE held a secured claim in excess of any recoverable deficiency in the account and had it not set-off its claim it would have been entitled to full satisfaction. What PRINCEVILLE overlooks is that § 553 does not create a right of set-off and the Trustee is not challenging the set-off under § 553. In discussing § 553, 4 *Collier on Bankruptcy*, para. 553.02 (15th ed. 1991) states:

Section 553 contemplates a setoff of a mutual debt and claim between the estate of the debtor and the creditor, and makes certain specific exceptions to this allowance of setoff. Its principal effect is not to create any new right of setoff where none exists under nonbankruptcy law, but merely to recognize the existence of the doc-

trine and to provide for some additional restrictions on its exercise.

The Trustee is challenging PRINCEVILLE's right to set-off OMI's account under § 545 or § 544 and general principles of state law, which remain unaffected by § 553, under which the Trustee contends the DEPARTMENT's lien is superior to PRINCEVILLE's right of set-off.

Section 545 provides in part as follows:

Statutory liens. The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(1) first becomes effective ...

. . . .

(D) when the debtor becomes insolvent;

. . . .

(2) is not perfected or enforceable ... against a bona fide purchaser ... at the time of the commencement of the case ...

Section 551 provides as follows:

**Automatic preservation of avoided transfer.** Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

Section 544 of the Bankruptcy Code has two subsections. Subsection (a) gives the trustee the hypothetical status of a lien creditor and provides in pertinent part:

(a) The trustee ... may avoid any transfer of property of the debtor ... that is voidable by—

(1) a creditor ... that obtains ... a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien ...

(2) a creditor ... that obtains ... an execution against the debtor that is returned unsatisfied ...

---

1. 20 ILCS 205/40 was formerly Ill.Rev.Stat.1991, ch. 127 ¶ 40. The new classification and numbering system for the Official Illinois Compiled Statutes was authorized by Public Act 87–1005, effective January 1, 1993.

2. Both the Trustee and PRINCEVILLE represented that the only issue of fact is what portion of the funds set off represented "grain assets" and indicated to the Court that if that fact needs to be determined the parties would likely be able to reach an agreement.

(3) a bona fide purchaser of real property ... that obtains the status of a bona fide purchaser and has perfected such transfer ...

Subsection (b) gives the trustee the power to avoid if a creditor has that power under applicable law, usually state law, and provides in part as follows:

(b) The trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim ...

Except as noted in footnote 2 above, the parties have taken the position there are not any questions of fact which prevent summary judgment. In part, this Court disagrees. There are questions of fact, but they are not controlling. First, the Trustee, under his § 545 and § 551 theory, must establish the DEPARTMENT has a lien on the funds set-off by PRINCEVILLE. In a separate adversary proceeding filed in this Court, No. 92–8182, Rebecca Doyle, Director of the Illinois Department of Agriculture and President of the Board of Directors of the Illinois Grain Insurance Corporation, et al, Plaintiffs vs. Richard E. Barber, Chapter 7 Trustee for Ostrom–Martin, Inc., the plaintiffs seek to establish the statutory lien on grain assets. In that adversary proceeding the Trustee in Count 1 of the counterclaim sought to avoid the fixing of the DEPARTMENT's lien pursuant to § 545 of the Bankruptcy Code. At the hearing in that adversary proceeding, which occurred after the hearing on the cross motions for summary judgment in this adversary proceeding, the DEPARTMENT indicated it did not consider the funds set-off by PRINCEVILLE to be grain assets and therefore subject to its lien. Although it would be unusual for the DEPARTMENT to overlook lienable grain assets, the possibility exists. The Trustee should be given the opportunity to prove the existence of the lien.

Next, the Trustee, under either theory must establish the DEPARTMENT's lien has priority over PRINCEVILLE's right of set-off. Under state law that issue involves both questions of fact and questions of law not addressed by the parties. PRINCEVILLE's right to set-off will be governed by its knowledge of the lien, actual or implied.

No factual hearing has been held and this Court does not know the extent to which PRINCEVILLE knew what occurred or what steps had been taken to effectuate the lien. Nor have the parties addressed the issue of implied knowledge arising from the undisputed facts.

■ A well recognized limitation to the right of set-off exists where a bank has knowledge of a third person's interest in deposited funds, or notice of facts sufficient to put the bank upon inquiry as to the character of the deposit, and the bank's right of set-off may be subject to the rights of the third party. *Citibank (New York State), N.A. v. Interfirst Bank,* 784 F.2d 619 (5th Cir.1986); *Bridgeport Co., Inc. v. U.S. Postal Service,* 39 B.R. 118 (Bkrtcy.1984); *In re Tonyan Const. Co., Inc.,* 28 B.R. 714 (Bkrtcy. N.D.Ill.1983). Discussing the exception, the court in *Tonyan Const. Co.* stated:

Ordinarily, where a party deposits funds in a bank, the funds become the property of the bank and the bank becomes the debtor of the depositor. In such a case, there is mutuality of obligation, out of which the bank's right of setoff arises. This right of set-off exists even where trust funds are deposited to the individual account of a fiduciary, or where funds held for the use of or as security for another are credited to the depositor's individual account. Where, however, a bank has knowledge of a third person's interest in deposited funds, or notice of facts sufficient to put it upon inquiry as to the true character of the deposit, the debtor-creditor relationship is altered and the bank's right of setoff is subject to the rights of such third party. Knowledge that a depositor's business customarily requires the handling of funds in which others have an interest, coupled with other circumstances of equitable cognizance tending to individualize a deposit or line of deposits, may constitute notice of facts sufficient to put the depositary bank upon inquiry as to the true nature of the deposit. (Citations omitted.)

28 B.R. at 725–26.

The state courts of Illinois have used a similar approach. In *Katz v. Belmont Nat.*

*Bank of Chicago*, 130 Ill.App.3d 1094, 86 Ill.Dec. 329, 475 N.E.2d 543 (1st Dist.1984), the court stated:

> It is well established that a bank may set-off its customer's account for debts owed to the bank. (Citations.) It is equally well established that a bank's right of set-off is not co-extensive with its right to recover. Where the bank has knowledge that funds belong to a third party, or are held in trust for a third party, its right to set-off is limited. (*Clemmer v. Drover's National Bank* (1895), 157 Ill. 206, 41 N.E. 728; *Kamfner v. Auburn Park Trust & Savings Bank (1931)*, 344 Ill. 200, 176 N.E. 363; *Bonhiver v. State Bank of Clearing (1975)*, 29 Ill.App.3d 794, 331 N.E.2d 390; *Live Stock Exchange v. Roseville State Bank (1928)*, 249 Ill.App. 44.) Knowledge of the depositor's business in handling the funds of third parties may be sufficient to put the bank on notice of the interests of such third parties. *Union Stock Yards Bank v. Gillespie (1890)*, 137 U.S. 411, 11 S.Ct. 118, 34 L.Ed. 724; *Kamfner v. Auburn Park Trust & Savings Bank; In re Tonyan Construction Co., Inc.* (Bankr.N.D.Ill. 1983), 28 Bank. 714, 725.

. . . .

Our holding does not place a significant burden on defendant. It is applicable only in those rare instances when a plaintiff alleges and, of course, later when he proves that the bank has knowledge that the funds belong to a third party. In *Union Stock Yards Bank v. Gillespie*, the United States Supreme Court, 137 U.S. at pp. 415–516, 11 S.Ct. at pp. 119–120, used language pertinent to the present case:

> "We do not mean to be understood as implying that a bank receiving deposits from one whom it knows to be in the commission business receives every deposit in trust for any unknown principal. A bank is not a sponsor for all its depositors, although it may know the character of their business. Its relations to its depositors are those of debtor; and generally, receiving and paying out money on the checks of its depositors, it discharges the full measure of its obligations. It is not ordinarily bound to inquire whence the depositor received the moneys deposited, or what obligation such depositor is under to other parties. It is only when there gather around any deposit, or line of deposits, circumstances of a peculiar nature, which individualize that deposit or line of deposits, and inform the bank of peculiar facts of equitable cognizance, that it is debarred from treating the deposit as that of moneys belonging absolutely to the depositor."

In *Paton's Digest of Legal Opinions*, Set-off, § 3:4, Deposit of Proceeds of Sale of Crop Subject to Landlord's Lien, it states:

> Brown, who was a lessee of Smith's farm, sublet the farm to Jones, under an agreement that Jones would pay Brown a share of the proceeds of the sale of grain grown on the farm. The subtenant thereafter deposited in a bank to Brown's credit his share of the proceeds of a sale of the grain produced. The deposit was evidenced by a certificate of deposit issued in Brown's name. Although the subtenant explained the nature of the deposit to an officer of the bank, the bank nevertheless applied the deposit in payment of a past-due indebtedness owing to the Bank by Brown, the tenant. At the time, the bank knew that Brown had not paid his rent to Smith. Did the bank act lawfully in so applying the deposit?

> *Opinion: In a similar situation, it was held that the bank had no right to charge the tenant's indebtedness against the deposit made by the subtenant.*

A situation similar to that referred to in the inquiry was presented in *Miller County Bank & Trust Co. v. Beasley* (1924) 165 Ark. 44, 262 S.W. 981. In that case, the court held that the defendant bank, knowing of the tenancy at the time a subtenant deposited funds received from the sale of cotton to the credit of the tenant, was charged with notice that the landlord had a statutory lien on the crop superior to the lien of the tenant. The court said:

> ... Booker [the bank's president] knew Austin [tenant] had not paid his rent; he knew that the deposit was made by a tenant of Austin, and Johnson [subten-

ant] told him when the deposit was made what it was for, and he must therefore be charged with knowledge, as a matter of law, that the lien of Beasley [landlord] was superior to that of Austin, and that Austin himself had no right to collect this rent without first paying his own.

Booker should have known that Austin's tenant [Johnson] was not voluntarily paying rent twice, and he actually knew that Austin has not paid Beasley, for he admitted that Beasley had so advised him, and this was done before the deposit was credited to Austin's note. [262 S.W. 982]

Notwithstanding these factual questions, PRINCEVILLE is entitled to summary judgment. To the extent the Trustee is relying on § 551 to recover the set-off from the Bank, he must lose. Section 551 preserves an avoided transfer for the benefit of the estate "but only with respect to property of the estate."

■■■ The legislative history to § 551 makes two points. First, the section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided. Second, the Trustee may not assert an avoided lien against after acquired property of the debtor. Neither of those situations is present in this case.

■■ The situation that is present in this case is that the Bank exercised the set-off prior to the bankruptcy filing. Even if the DEPARTMENT has a § 40.23 lien which the Trustee can avoid, the issue is presented of whether the set-off funds are "property of the estate".

In discussing § 551, 4 *Collier on Bankruptcy*, § 551.01 (15th Ed.) in footnote 5, states:

124 Cong.Rec. H11,097 (daily ed. Sept. 28, 1978); S. 17,414 (Oct. 6, 1978). Although the avoided transfer may be preserved only with respect to property of the estate, it is clear that any interest in property preserved for the benefit of the estate or ordered transferred to the estate under section 551 becomes property of the estate under section 541(a)(4). Thus if a trustee

avoids a senior lien on property of the estate and the lien is preserved for the benefit of the estate against junior liens, the senior lien becomes property of the estate.

A more difficult problem arises when the lien does not encumber property of the estate. As noted above, the legislative history states that the estate may not have the benefit of a preserved tax lien insofar as it encumbers after-acquired property of the debtor. That result is sound to the extent that after-acquired property of the debtor generally does not become property of the estate. There can be no doubt that the lien could be preserved as to after-acquired property of the debtor that does become property of the estate. *See* sections 541(a)(5)–(6) and 1306(a). A less clear situation concerns an avoided lien encumbering property that was property of the debtor and that would have become property of the estate but for a transfer of the property by the debtor before the filing of the petition. Consider the example of an unsecured creditor who obtains a judgment lien on real property of the debtor within 90 days before bankruptcy. After the lien is obtained but before the bankruptcy petition is filed, the debtor transfers the real property subject to the judgment lien to a *bona fide* purchaser for a present fair equivalent value who promptly records title in accordance with state law. The trustee in bankruptcy cannot avoid the transfer of real property to the *bona fide* purchaser, but the trustee can avoid the fixing of the judgment lien as a preferential transfer under section 547. As under prior law, the trustee should be able to preserve the avoided lien for the benefit of the estate as against the *bona fide* purchaser of real property. Otherwise, the *bona fide* purchaser will receive a windfall. *See First National Bank b. [v.] Staake*, 202 U.S. 141 [26 S.Ct. 580, 50 L.Ed. 967] (1906). Section 551, however, permits preservation of the avoided lien "only with respect to property of the. estate". In this context, in order to implement legislative intent it may be appropriate to expand the scope of section 551 to

apply to property that is not property of the debtor rather than to apply only to property that is property of the estate.

This Court has been able to find only one case which is applicable. In *In re Ward*, 42 B.R. 946 (M.D.Tenn.1984), prior to bankruptcy a creditor of the debtor had taken judgment against the debtor and the debtor had then conveyed real estate to a third party. After the debtor filed bankruptcy, the trustee filed suit against the judgment creditor and the third party to avoid the judgment lien, but to preserve it and enforce it against the third party while that suit was pending the trustee settled with the judgment creditor, took an assignment of the judgment lien and proceeded against the third party. The court held that the trustee could not preserve the lien against the real estate as it was no longer property of the estate. While recognizing that the result was inconsistent with general principles of collection and distribution under the Code, the court held the plain meaning of § 551 required such a result.

In the case before this Court, prior to bankruptcy the funds were set-off. They were not part of the bankruptcy estate at the time of the bankruptcy filing. As they were not part of the bankruptcy estate the Trustee may not reach them via § 551.

■ To the extent the Trustee is relying on § 544, he also must lose. Section 544(a)(1) and (2) permits the trustee to avoid the set-off if a hypothetical judgment lien creditor could avoid it.[3] The reason the Trustee cannot avoid the set-off is that a judgment lien creditor could only reach the funds via a state law garnishment and in that situation the state law of Illinois gives PRINCEVILLE priority as it provides:

Deductions and set-offs of garnishee. The garnishee is entitled to assert against the indebtedness due to the judgment debtor offsetting claims against either or both the judgment creditor and the judgment debtor, whether due at the time of service of the garnishment summons or thereafter to become due and whether liquidated or unliquidated, except claims for unliquidated damages for actions sounding in tort. To the extent that other property belonging to the judgment debtor or in which the judgment debtor has an interest is pledged to or held by the garnishee in good faith as security or that the garnishee has other just claim against the other property, the garnishee is entitled to retain the other property. The garnishee is liable for the balance of the indebtedness due to the judgment debtor after the offsetting claims are adjusted and for the balance of other property after deducting property to which the garnishee has just claim. The verdict or finding and judgment shall show the amount of offsetting claims or deductions allowed against each party.

735 ILCS 5/12–708 (Formerly Ill.Rev.Stat. 1991, ch. 110, ¶ 12–708.)

[6] The Trustee fares no better under § 544(b) which presents a separate method of avoiding a transfer. Under § 544(b) the Trustee has the power to avoid the set-off if an unsecured creditor in the case has that power under applicable law. In this case the Trustee is relying on the DEPARTMENT's § 40.23 lien. As the Trustee's theory is based on a secured lien he cannot come within the scope of § 544(b) which is limited to unsecured claimants.

■ There are two other arguments, one by the Trustee and one by PRINCEVILLE, which need to be addressed. The Trustee relies on *In re H.R. Hindle & Co., Inc.*, 149 B.R. 775 (Bkrtcy.E.D.Pa.1993), a case arising under the Perishable Agricultural Commodities Act (PACA), asserting that it is expressly on point. In that case, a secured lender set off the funds in the bank account of a debtor, a licensed dealer of perishable agricultural commodities. The producers brought an adversary proceeding against the debtor and the lender, claiming in part that the funds captured by the lender were PACA trust funds and not part of the bankruptcy estate. Under PACA, a statutory trust is created for the benefit of the agricultural producers when their inventory is trans-

---

3.  Section 544(a)(3) is not applicable as the facts do not involve "a bona fide purchaser of real property".

ferred to any type of produce dealer. The regulations promulgated under the PACA provide:

> *Trust assets.* The trust is made up of perishable agricultural commodities received in all transactions, in all inventory of food or other products derived from such perishable agricultural commodities, and all such receivables or proceeds from the sale of such commodities and food or products derived therefrom. *Trust assets are to be preserved as a non-segregated "floating" trust. Commingling of trust assets is contemplated* (emphasis added).

149 B.R. at 784. Speaking to the operation and effect of the PACA, the court stated:

> The PACA trust fund therefore hovers over not only the debtor's perishable commodities, but also products made from them and the accounts receivable and proceeds from them. The term "floating" extends the trust to all produce-related inventory, receivables, and proceeds of the debtor-dealer, regardless of origin or destination, to satisfy a PACA trust res. Thus, once the producer establishes its PACA trust-beneficiary status, it has no obligation to trace the assets to specific funds, and prevails as long as it establishes that proceeds of its assets have come into the hands of a buyer.
>
> . . . .
>
> The PACA trust is therefore extremely potent in its ability to affect distribution in bankruptcy. It effectively provides its beneficiaries with a claim status that trumps that of all other creditors, even secured creditors.
>
> . . . .

In order for the PACA statutory trust to operate in favor of a producer of agricultural commodities, that producer must file notice of its intention to preserve trust status within the time dictated in the pertinent provisions of the Code of Federal Regulations. The applicable regulation, 7 C.F.R. § 46.46(g)(1), provides as follows:

> Notice of intent to preserve the benefits under the trust must be in writing, given to the debtor, and filed with the Secretary within 30 calendar days:
>
> (i) After expiration of the time prescribed by which payment must be made pursuant to the regulation,
>
> (ii) After expiration of such other time by which payment must be made as the parties have expressly agreed to in writing before entering into the transaction, but not longer than [30 days after receipt and acceptance of the commodities], . . .

Once the notice requirement is satisfied, the trust is created and attaches to all of the buyer's related produce and proceeds therefrom, regardless of the source of said inventory. 149 B.R. at 784–85. (Citations omitted.)

The court held that the producers had valid PACA trust claims and that they had a right to recover the funds paid to the secured lender unless it could establish that it accepted the trust funds as a bona fide purchaser.

The statutory provision relied on by the Trustee in the present case differs significantly. It provides, in pertinent part:

> "Grain assets" means all grain owned or stored by said failed grain dealer or failed warehouseman, including grain in transit which was shipped by the failed grain dealer or failed warehouseman and for which payment has not been received; redeposited grain; proceeds from the sale of grain due or to become due; the equity (net of any secured financing directly associated therewith) in assets in commodity exchange grain margin accounts, any monies due or to become due (net of any secured financing directly associated therewith) from any futures contracts on any recognized commodity exchange; any other unencumbered funds or property or equity of the failed grain dealer or warehouseman in funds or property wherever located which can be directly traced as being from the sale of grain by the failed grain dealer or failed warehouseman, provided that any such funds, property, or equity in funds or property, shall not be deemed to be encumbered unless the encumbrance results from good and valuable consideration advanced by any secured party on a bona fide basis, and further provided that said encumbrance is not the result of the taking

of such funds, property, or equity in such funds or property as additional collateral for an antecedent debt; or other unencumbered funds, property, or equity in assets.

A statutory lien shall be imposed on all "grain assets" of a grain dealer or warehouseman in favor of claimants, including lenders, possessing warehouse receipts, covering grain owned or stored by the grain dealer or warehouseman; in favor of claimants with written evidence of ownership (other than warehouse receipts) disclosing a storage obligation of a grain dealer or warehouseman, including scale tickets, settlement sheets, and ledger cards; in favor of claimants who have loaned money to a grain dealer or warehouseman and were to receive a warehouse receipt as security for that loan but the grain dealer or warehouseman failed within 21 days after receiving the loan monies and no warehouse receipt was issued; in favor of claimants who have surrendered warehouse receipts as part of a grain sale transaction, the grain dealer or warehouseman failed within 21 days thereafter, and the person surrendering the warehouse receipt did not get fully paid therefor; and in favor of all other claimants who possess written evidence of the sale of grain to a failed grain dealer or failed grain warehouseman, but did not get fully paid therefor.

The aforesaid lien shall secure all claims of claimants described in subparagraphs (a), (b) and (c) below of this paragraph; shall arise at the time of delivery of the grain for sale, at the commencement of the storage obligation, or at the time funds are advanced by the lender; and shall terminate when the liability of the grain dealer or warehouseman to the claimant has been discharged; provided, however, that the priority of each such lien, as among the respective claimants, shall not relate to the date the claim arises but shall be governed solely by the priority rules which are contained in this Section. The statutory lien claims of all claimants shall be deemed to be assigned by operation of this law to the Illinois Department of Agriculture, and in the event of a failure and subsequent liquidation, such lien shall transfer over to assets or proceeds of assets either received or liquidated by the Illinois Department of Agriculture. The Illinois Department of Agriculture shall, in the event of a failure, enforce the aforesaid statutory lien claims and allocate the proceeds thereof as follows ...

20 ILCS 205/40.23. The Trustee, coining terms from the PACA, characterizes the Illinois statute as imposing a "§ 40.23 trust" on all assets of OMI, including the bank account which was set off by PRINCEVILLE. Under the terms of the statute, the claimants have a lien and are not accorded any interests as trust beneficiaries. The distinction is critical. In *Matter of Great American Veal, Inc.*, 59 B.R. 27 (Bkrtcy.D.N.J.1985), the court discussed the statutory trust created by the Packers and Stockyards Act, 7 U.S.C. § 196(a):

> The legislative history of the 1976 amendment to the Act makes it clear that Congress intended to establish a statutory trust whose corpus is not subject to creditors' rights even in bankruptcy proceedings. In pertinent part the amendment provides as follows:
>
> > [I]nasmuch as this is a trust as opposed to a lien, it falls in a different category and therefore it does not substantially affect the Bankruptcy Act. A lien would fall more in the category of affecting priorities such as secured transactions as they are recognized under the Uniform Commercial Code and then take or assume a priority under the Bankruptcy Act. But a trust relationship such as that would arise as a result of section 8 [7 U.S.C. Sec. 196], I think falls outside of the purview of the Bankruptcy Act. The trust property would not become an asset in the bankruptcy proceedings. *Business Meetings of Packers and Stockyards Act of 1921. As Amended*, Committee on Agriculture, H.R., 94th Cong., 2d Sess. Dec. 1976 at 130–31.

For that reason, the Trustee's reliance on *In re H.R. Hindle & Co., Inc.*, is misplaced.

PRINCEVILLE argues that the Trustee cannot avoid the lien under either § 545(1) or (2), because the lien did not become effective

as a result of OMI's insolvency or because the lien was not enforceable against a bona fide purchaser at the time the bankruptcy case was commenced. This Court need not address this argument as it goes to the Trustee's theory under § 545 and § 551 which this Court has previously found not to be sustainable for other reasons.

For these reasons, the Trustee's motion for summary judgment should be denied, and PRINCEVILLE's motion for summary judgment should be allowed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.