FARMERS GRAIN COMPANY OF ESMOND, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–767C.

United States Court of Federal Claims.

April 24, 1995.

Watson B. Tucker, Chicago, IL, for plaintiff.

Philip A. Shaikun, Dept. of Justice, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. David M. Cohen, Director, and Sharon Y. Eubanks, Asst. Director, of counsel.

## OPINION

FUTEY, Judge.

This contract case is before the court after a trial on the merits. Under count I, plaintiff requests compensation for defendant's breach of contract. Alternatively, under count II, plaintiff seeks compensation under a theory of *quantum meruit* for service rendered. Defendant contends that plaintiff materially breached the contract, relieving defendant of any obligation to perform. In addition, defendant maintains that plaintiff has failed to satisfy the requirements for recovery under a *quantum meruit* basis.

### Factual Background[1]

Plaintiff, Farmers Grain Co. of Esmond, is a farmer's cooperative that operated a grain warehouse in Illinois. On July 1, 1983, plaintiff entered into Uniform Grain Storage Agreement (UGSA) No. A17–3–CCC244J with the Commodity Credit Corporation, a corporation owned by defendant, United States. Pursuant to the UGSA, plaintiff

1. The facts in this case appear in an earlier opinion. *See Farmers Grain Co. of Esmond v. United States,* 29 Fed.Cl. 684 (1993). The facts below are recited only as they pertain to this opinion.

agreed to store and load out grain owned by defendant.

During the summer of 1986, plaintiff's grain warehouse caught fire. As a result, plaintiff decided to surrender its federal and state grain licenses. On October 6, 1986, the Illinois Department of Agriculture (IDA) seized and began selling the grain stored in the warehouse. The IDA completed liquidation on February 19, 1987, using the proceeds to pay defendant and other creditors.

Plaintiff claims that defendant owes storage costs of $49,657.04 and loadout costs of $130,311.47 incurred during the liquidation period. Plaintiff originally raised these claims in a related proceeding before the Department of Agriculture Board of Contract Appeals (AGBCA). *See Farmers Grain Co. of Esmond,* 92–3 BCA 25,072, 1992 WL 108002 (1992). The AGBCA dismissed plaintiff's claims since they had not been presented to the Contracting Officer (CO) for a final decision. Thereafter, plaintiff presented the claims to the CO. The CO denied plaintiff's claims, and plaintiff appealed that decision to this court.

Plaintiff contends that, under the UGSA, defendant must pay for the storage and loadout costs incurred during liquidation. Alternatively, plaintiff argues that an implied-in-fact contract existed between the parties. Defendant asserts that it has no duty to pay since plaintiff materially breached the UGSA by failing to store the proper quantity and quality of grain and by being unable to deliver grain upon request. Moreover, defendant claims that plaintiff cannot establish the existence of an implied-in-fact contract.

## Discussion

■ Under the Contract Disputes Act, a plaintiff may directly appeal a CO's final decision to this court. 41 U.S.C. § 609(a)(1) (Supp. IV 1992). Plaintiff objects to defendant raising new arguments that were not presented to the CO. The court, however, reviews plaintiff's claim *de novo.* 41 U.S.C. § 609(a)(3); *Wilner v. United States,* 24 F.3d 1397, 1401 (Fed.Cir.1994). Therefore, defen-

dant is entitled to present alternative arguments.

### I. *Uniform Grain Storage Agreement*

Plaintiff argues that it performed the UGSA by storing and loading out defendant's grain during liquidation. Therefore, plaintiff concludes that defendant is obligated to pay for those services. Alternatively, plaintiff notes that if defendant objected to plaintiff's loss of control, defendant's recourse was to remove plaintiff's warehouse from the List of Approved Warehouses under paragraph 20, rather than claim free storage and loadout.

Defendant asserts that, once plaintiff surrendered its license, it could no longer deliver the grain upon request. In addition, defendant claims that plaintiff failed to maintain the proper quantity and quality of grain as required under the UGSA. Defendant concludes that plaintiff's actions materially breached the UGSA and relieve defendant of its obligation to pay.

■ Upon a material breach of a contract, the non-breaching party has the right to discontinue performance under the contract. *Stone Forest Industries, Inc. v. United States,* 973 F.2d 1548, 1550 (Fed.Cir.1992). Not every departure from the literal terms of a contract, however, is sufficient to be deemed a material breach. *Id.* at 1550. In determining whether a party caused a material breach, the court must consider the nature and effect of the violation. *Id.* at 1551 (citing Restatement of Contracts (Second) § 241).

Paragraph 13 of the UGSA contains settlement provisions should plaintiff fail to maintain the proper quantity and quality of grain: [2]

> Settlement for Loadout—Subject to other applicable portions of this Agreement, settlement shall be made by CCC in accordance with this section with respect to each individual warehouse for differences in value between grain loaded out by the warehouseman and grain ordered shipped by CCC....
>
> (a) Quantity Differences on Commingled Grain Accepted—On commingled grain

---

**2.** Def.Ex. 8 at ¶ 13.

shipped by the warehouseman and accepted by CCC, settlement for the value of ... underdeliveries in quantity shall be made by check, cash, or money order unless a different form of payment is agreed to by the parties, or at CCC's option, CCC will request ... balance warehouse receipts.

. . . .

(b) Grade and Quality differences on Commingled Grain Accepted by CCC— ... The warehouseman shall pay CCC for the value of any underdeliveries in quality....

Since some deviation in quantity and quality is foreseen by the UGSA, plaintiff's failure to maintain the grain does not necessarily breach the UGSA. *See HNV Cent. River Front. Corp. v. United States*, 25 Cl.Ct. 606, 613 (1992). Although it is possible for the grain to deteriorate so far as to be beyond the expectation of the parties, there is no evidence before the court to suggest that the grain deteriorated to that extent.

█ Regardless, the parties did address plaintiff's inability to deliver the grain upon request. Paragraph 11 of the UGSA requires the warehouseman to release defendant's grain to defendant upon demand:

When requested by CCC, the warehouseman shall, unless prevented by circumstances beyond the warehouseman's control, promptly deliver the grain ordered shipped by CCC pursuant to the provisions of this section.

*See Marvel Eng'g Co. v. United States*, 14 Cl.Ct. 614, 618 (1988). Once plaintiff surrendered its license voluntarily, however, it could no longer comply with this provision. Although plaintiff contends that it maintained control over the distribution of the grain, the evidence presented to the court suggests that the IDA seized the grain and controlled its disbursement.

For example, Illinois statutes give the Director of Agriculture the power to deposit the assets of a warehouseman in a trust and specify that the Director is acting as a trustee regarding these assets. Ill.Rev.Stat. ch. 240 § 25/9, ch. 20 § 205/40.23. Although § 40.23 imposes a lien on the assets, that language addresses the treatment of assets in terms of creditors' rights. *See Ostrom–Martin, Inc. v. Princeville State Bank*, 161 B.R. 800, 808 (Bankr.C.D.Ill.1993). In terms of the IDA's control over the assets, however, the statutes suggest that the IDA manages them as a trustee. The United States Bankruptcy Court supported this proposition in *Ostrom–Martin* when it characterized the IDA's activities as a "seizure" of the elevator. *Id.* at 801.

The regulations support this interpretation. Title 8, section 3.230 of the Illinois Administrative Code states that, should the warehouseman surrender his license, the grain assets "shall be placed in trust" by the IDA, who then "shall convert the ... grain assets ... to cash." Similarly, § 3.180 states that, when a warehouseman cannot meet his financial obligations, the IDA, as trustee, "shall take possession of all of the licensee's ... assets." If the warehouseman refuses to surrender the assets, the IDA is authorized to take legal action to secure them. Ill.Admin.Code tit. 8, § 3.180.

Testimony at trial also supports this proposition. Thomas Jennings, a bureau chief at the IDA, testified that, upon plaintiff's surrender of its warehouse license, the IDA "seized" the grain assets and commenced liquidation.[3] Moreover, he stated that plaintiff allowed the IDA to take over.[4] This was corroborated by plaintiff's president, Gerald Sanderson, who acknowledged that during liquidation he believed the IDA had control over the warehouse.[5] Although Mr. Sanderson indicated that plaintiff's employees physically loaded out the grain,[6] Stuart Jackson, a warehouse supervisor for the IDA at the time of liquidation, testified that he supervised the loadout process, including the hiring and firing of employees.[7] Mr. Jackson testified that plaintiff did not make any man-

---

**3.** Tr. at 189.

**4.** Tr. at 192.

**5.** Tr. at 37–45.

**6.** Tr. at 26–29.

**7.** Tr. at 231–33.

agement decisions concerning liquidation.[8] He also stated that he kept plaintiff's employees on the job because they were already familiar with that particular warehouse.[9] Further, even though Larry Erickson, a farm business consultant hired by plaintiff, testified that plaintiff *directly paid its employees* who loaded out the grain,[10] testimony from other witnesses indicated that plaintiff was bankrolled by the IDA.[11] The IDA chose this method so that the employees could receive their paychecks on time.[12]

Defendant did not affirmatively terminate the contract when plaintiff surrendered its licenses. Nevertheless, the law and facts suggest that plaintiff could not have delivered grain upon defendant's demand. This is not a minor departure from the terms of the UGSA; it is a material breach of the contract. Mere storage does defendant little good if it cannot gain access to the grain thereafter. Thus, due to its inability to deliver the grain upon request, plaintiff cannot recover storage and loadout costs under the contract. *See Stone Forest,* 973 F.2d at 1550.

■ Finally, plaintiff is correct in noting that paragraph 20 of the UGSA allows defendant *to remove plaintiff's warehouse from the* List of Approved Warehouses in response to plaintiff's loss of control.[13] Nevertheless, plaintiff is incorrect in asserting that this is defendant's sole recourse. Paragraph 20 merely states that "a warehouse *may* be removed" from the list, indicating that this is but one of defendant's options.[14] In addition, this conclusion does not result in defendant receiving free storage and loadout under the UGSA. Instead, as discussed above, defendant is relieved of its duty to pay since plaintiff materially breached the UGSA.

## II. *Quantum Meruit*

■ As an alternate basis for recovery, plaintiff maintains that defendant is still bound to pay for loadout and storage costs under principles of *quantum meruit.* Defendant, on the other hand, asserts that recovery based on a *quantum meruit* theory requires the existence of a contract implied in law or a contract implied in fact. Defendant asserts that the court lacks jurisdiction over contracts implied in law. Furthermore, defendant argues that an implied-in-fact contract would require plaintiff to confer a benefit on defendant and acceptance of that benefit by defendant. Defendant contends that plaintiff did not confer a benefit since the IDA controlled distribution of the grain. Therefore, defendant concludes that it is not bound to pay for storage and loadout under a *quantum meruit* theory.

Typically, an action based on *quantum meruit* is based on a contract implied in law, rather than a contract implied in fact. *Farmers Grain,* 29 Fed.Cl. at 686 (citing *Fincke v. United States,* 230 Ct.Cl. 233, 675 F.2d 289 (1982); *Wells Fargo Bank, N.A. v. United States,* 26 Cl.Ct. 805, 817 (1992)). The Supreme Court has held that this court lacks jurisdiction to hear suits based on implied-in-law contracts. *United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 2968–69, 77 L.Ed.2d 580 (1983). Nonetheless, the Court of Appeals for the Federal Circuit has held that, where a party confers a benefit on the government and the government accepts, the party may recover on a *quantum meruit* basis under an implied-in-fact contract. *United States v. Amdahl Corp.,* 786 F.2d 387, 393 (Fed.Cir.1986).

As discussed in part I above, even though grain was stored in plaintiff's warehouse, plaintiff could not grant defendant access to the grain. Further, the IDA would not grant defendant access to the grain.[15] Therefore, defendant did not benefit from storage since it could not gain access to the grain. In addition, plaintiff did not confer a benefit from loadout since the IDA, rather than

---

8. *Id.*

9. Tr. at 233.

10. Tr. at 294–95.

11. Tr. at 198, 240, 242–46; *see also* Def.Ex. 20 at 29, 53.

12. Tr. at 244.

13. Def.Ex. 8.

14. *Id.* (emphasis added).

15. Tr. at 200–01.

plaintiff, loaded out the grain. Also, plaintiff had received loadout costs.[16] Finally, the IDA's seizure of the grain and refusal to allow defendant access to it is not an acceptance of a benefit. Rather, it suggests that defendant was forced to comply with the IDA's liquidation procedure. Since plaintiff did not confer a benefit from storage or loadout, nor did defendant accept such a benefit, plaintiff cannot recover under an implied-in-fact contract theory.

### Conclusion

For the reasons discussed above, the court finds that defendant is not obligated to pay storage and loadout costs to plaintiff incurred during liquidation. Accordingly, the Clerk is directed to enter judgment in favor of defendant. No costs.

---

**16.** Tr. at 196, 217–218; *see also* Def.Ex. 23 at 519.